**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COREY LANE,<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF NEW JERSEY, TOWNSHIP OF TEANECK POLICE DEPARTMENT, ZACHARY J. REED, in his individual capacity, JACQUELINE CHOI, in his individual capacity,<br><br>*Defendants*. | Civil Action No. 22-4239<br><br><u>OPINION</u> |

**John Michael Vazquez, U.S.D.J.**

This action arises out of allegations that Defendants falsely arrested and maliciously prosecuted Plaintiff. Currently pending before the Court are three motions to dismiss Plaintiff's Complaint. D.E. 5, 17, 18. The Court reviewed the parties' submissions,[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the motions are **GRANTED**.

---

[1] Defendant State of New Jersey's brief in support of its motion will be referred to as "Def. NJ Br." (D.E. 5-2); Plaintiff's opposition will be referred to as "Plf. NJ Opp." (D.E. 16-1); and Defendant's reply will be referred to as "Def. NJ Reply" (D.E. 16). Defendant Choi's brief in support of its motion will be referred to as "Def. Choi Br." (D.E. 17-3); Plaintiff's opposition will be referred to as "Plf. Choi Opp." (D.E. 22-1); and Defendant's reply brief will be referred to as "Def. Choi Reply" (D.E. 20). Defendants' Township of Teaneck Police Department and Zachary J. Reed (collectively, "Teaneck Defendants") brief in support of their motion will be referred to as "Teaneck Defs. Br." (D.E. 18-3); Plaintiff's opposition will be referred to as "Plf. Teaneck Opp." (D.E. 23-1); and Defendants' reply brief will be referred to as "Teaneck Defs. Reply" (D.E. 24).

I.       BACKGROUND[2]

*Pro se* Plaintiff, Corey Lane, was married to Angela Wade ("Wade") until their divorce was finalized on April 15, 2014. Compl. ¶¶ 1, 16. Plaintiff and Wade have four children together, and they agreed on joint custody of their children. Compl. ¶ 16. After the divorce, Plaintiff had an encounter with the New Jersey Division of Child Protection and Permanency ("DCPP", formerly known as "DYFS"), which led to "years of unsuccessful court battles with DYFS." *Id.* ¶ 17.[3] On April 25, 2019, Wade obtained an amended final restraining order (the "Restraining Order" or the "Order") against Plaintiff, signed by New Jersey Superior Court Judge Bishop-Thompson. *Id.* ¶ 18; *see also* Ex. A, Order at 14-17 (D.E. 17-2).[4]

The Order bars Plaintiff from Wade's residences and places of employment, prohibits any "unsupervised contact with [Plaintiff's] minor children," and proscribes any contact with Wade "without permission of the court." Ex. A, Order at 14, 17. It also requires that any "contact or communication," including "contact regarding the health, welfare, and well-being of their

---

[2] The factual background is taken from Plaintiff's Complaint, D.E. 1 ("Compl."), as well Exhibit A to Defendant Choi's Brief, D.E. 17-2, which is a copy of a final restraining order and its amendments issued against Plaintiff in a related state court action. When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the Complaint and take judicial notice of matters of public record, such as court orders and docket entries. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Khan v. Borough of Englewood Cliffs*, No. 12-7837, 2014 WL 295069, at *3 (D.N.J. Jan. 27, 2014) (citation omitted).

[3] Plaintiff filed a separate civil rights lawsuit before this Court for claims against the New Jersey Division of Child Protection and Permanency for allegations arising out of actions taken around this time. *See Lane v. New Jersey Division of Child Protection and Permanency*, No. 22-cv-04238.

[4] The Court's citations to "Ex. A" correspond to Exhibit A to the Declaration of Dag Barkha Patel (D.E. 17-1) and the page numbers cited correspond with those in the ECF header.

children" be made through the "Family Wizard."[5] *Id.* The Order continues that its terms "may only be changed or dismissed by the Family Court" and that a violation of the Order may "constitute criminal contempt . . . and may also constitute violations of other state and federal laws which can result in [Plaintiff's] arrest and/or criminal prosecution." *Id.* at 17.

On May 25, 2020, Plaintiff was informed by Wade's brother that his "oldest daughter was in a psychiatric hospital for attempting suicide and that [his] children needed to see [him]." *Id.* ¶ 19. Wade's brother also provided Plaintiff "directions and a house description as to the whereabouts of [Plaintiff's] children's residence with their mother." *Id.* Plaintiff "proceeded to search" for his children and found a house that appeared to match the description that Wade's brother provided. *Id.* ¶ 21. Before reaching the doorbell of the house, Plaintiff noticed Teaneck Police Officer Reed's patrol car and approached Defendant Reed to "give him the details of [his] unfortunate predicament." *Id.* After Defendant Reed learned of Plaintiff's restraining order, Plaintiff was arrested and charged with violating the restraining order and with harassing Defendant Reed. *Id.* ¶¶ 23, 27.

On September 16, 2020, during a second case management conference, Prosecutor Jacqueline Choi made Plaintiff a plea offer to drop the harassment charge and to serve one year of probation for violating the restraining order. *Id.* ¶ 29. Plaintiff rejected the plea offer and the matter was listed for trial. *Id.* ¶ 30. Plaintiff's defense attorney filed a motion to dismiss pursuant to N.J.S.A. 2C:2-11 (*de minimis infractions*), which was granted by Bergen County Superior Court Judge Mizdol on October 30, 2020. *Id.* ¶¶ 34-35. Plaintiff then began to "search [for] Defendants['] possible motive behind their cruel and malicious prosecution." *Id.* ¶ 36. Plaintiff

---

[5] The Restraining Order makes numerous references to the "Family Wizard," but the parties do not indicate what the "Family Wizard" is. *See* Ex. A, Order at 14, 17.

3

learned of the Attorney General Office's "Bias Crime Report Reward Program," which Plaintiff describes as offering up to a $25,000 reward for tips leading to a bias crime conviction. *Id.* ¶¶ 36, 42. Plaintiff alleges that this program "puts an unjust bounty on the freedom and liberty of all people," and "motivates corruptible prosecutors and corruptible police officers through greed to battle against justice so that injustice can reward their self[-]interests." *Id.* ¶ 40. Plaintiff adds that "[i]t's evident" that Defendant Reed and Defendant Choi were "too busy focusing on cashing out on their opportunity to increase their yearly gross income" when they decided to prosecute him. *Id.* ¶ 41. In sum, Plaintiff alleges that the Bias Crime Reporting Rewards Program corrupted Defendant Reed and Defendant Choi, and that Defendants prosecuted him in an effort to obtain a monetary reward under the program. *Id.* ¶¶ 38-42. Plaintiff also appears to allege that the State of New Jersey and the Teaneck Police Department encourage such activity. *Id.*

## II.   PROCEDURAL HISTORY

On June 23, 2022, Plaintiff filed a Complaint that appears to assert nine counts[6]: six pursuant to 42 U.S.C. § 1983, one pursuant to the New Jersey Civil Rights Act ("NJCRA"), and two for damages. The following parties filed motions to dismiss: (1) Defendant New Jersey (D.E. 5); (2) Defendant Choi, in her individual capacity (D.E. 17); and (3) Defendant Teaneck Police Department and Defendant Reed, in his individual capacity (collectively, the "Teaneck Defendants") (D.E. 18).

## III.   STANDARDS OF REVIEW

### A.   Rule 12(b)(1)

---

[6] Counts One through Five are numbered in the Complaint. Plaintiff appears to indicate all remaining counts with bold, capitalized, centered headers, followed by numbered paragraphs. *See* Compl. at 10-25.

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed. *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (internal quotation marks and citation omitted). A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Id*. Here, Defendant New Jersey asserts the defense of sovereign immunity under the Eleventh Amendment based on the pleadings, thereby raising a facial attack.[7] *See Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *3 (D.N.J. July 15, 2015) ("[T]he State Defendants' motion asserts the defense of sovereign immunity based on the facts as pleaded in the Second Amended Complaint and is thus a facial attack."). Accordingly, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

---

[7] While New Jersey raises its Eleventh Amendment sovereign immunity defense under Rule 12(b)(1), it recognizes that an Eleventh Amendment sovereign immunity defense may be analyzed under either Rule 12(b)(1) or Rule 12(b)(6). *See* Def. NJ Br. at 4 (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999)).

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## IV.   ANALYSIS

Plaintiff's claims arise under 42 U.S.C. § 1983 and the NJCRA. Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). To prove a Section 1983 claim, a plaintiff must demonstrate that (1) a person deprived her of a right secured by the Constitution or federal law; and (2) the person who deprived her of that right acted under color of state law. *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *2 (D.N.J. July 29, 2016) (citation omitted).

The NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2. The "NJCRA was modeled after § 1983, [so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez*, 2016 WL 4107689, at *5 (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

### A. Defendant New Jersey

New Jersey argues that it has sovereign immunity under the Eleventh Amendment so that all claims should be dismissed against it for lack of subject matter jurisdiction. *See* Def. NJ Br. at 7-9. Plaintiff responds that Defendant is "wrong about me having lack of subject matter jurisdiction," and reasons that regardless of Defendant's sovereign immunity arguments, the Court

7

retains subject matter jurisdiction based on Plaintiff's alleged § 1983 violations. Plf. NJ Opp. at 2-3.

Under the Eleventh Amendment, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XL. The United States Supreme Court has interpreted the Eleventh Amendment as affirming "the fundamental principle of sovereign immunity" as a limit on a federal court's judicial authority. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Due to sovereign immunity, a federal court generally does not have jurisdiction over suits against "a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own immunity." *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) (citations omitted). Accordingly, the Eleventh Amendment bars all private suits against non-consenting States in federal court. *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 530 F.3d 190, 194 (3d Cir. 2008) (citation omitted). While sovereign immunity is "subject to three exceptions: 1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to an ongoing violation of federal law,"[8] Plaintiff has not cited or analyzed any of these exceptions. Further, the Court does not find a basis to potentially apply any of the three exceptions. Thus, the claims against Defendant New Jersey are dismissed from this matter due to sovereign immunity.

Moreover, "[t]o state a claim under [4.2. U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by *a person* acting under the color of state law." *West v.*

---

[8] *See MC Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

8

*Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).  A State does not qualify as a "person" under Section 1983 or the New Jersey Civil Rights Act ("NJCRA").  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under §1983."); *New Jersey Chinese Cmty. Ctr. v. McAleer*, No. 21-8320, 2022 WL 3403297, at *7 (D.N.J. Aug. 15, 2022) (citation omitted) ("[B]ecause a state is not a 'person' within the meaning of section 1983 . . . it follows that the State of New Jersey cannot be held liable as a 'person' under any of these sections of the Civil Rights Act.").  Thus, Plaintiff's Section 1983 and NJCRA claims against Defendant New Jersey are dismissed for this additional reason.

### B. Defendant Choi

Choi moves to dismiss on the grounds that she is entitled to prosecutorial immunity or qualified immunity; Choi also contends that Plaintiff fails to plausibly plead a malicious prosecution claim.  Def. Choi Br. at 6-16.  "Under federal law, prosecutors have absolute immunity from civil liability for their conduct in their role as prosecutors."  *Newsome v. City of Newark*, No. 13-6234, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014) (citation omitted).  Thus, "decisions regarding how to proceed with a prosecution serve a prosecutorial, rather than administrative function and thus warrant absolute immunity."  *Id.* at *3. Specifically, "the decision whether to bring a criminal suit" falls "squarely within a prosecutor's absolute immunity."  *Davis v. Grusemeyer*, 996 F.2d 617, 629 (3d Cir. 1993).  Immunity is conferred "'even where [the prosecutor] acts without a good faith belief that any wrongdoing occurred.'"  *Munchinski v. Solomon*, 618 F. App'x 150, 154 (3d Cir. 2015) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992)).  Immunity is also conferred whether the prosecutor is sued in their personal or official capacity.  *See Langford v. Gloucester Twp. Police Dep't*, No. 16-1023, 2016 WL 7130912,

9

at *3 (D.N.J. Dec. 7, 2016) (finding that absolute immunity barred the plaintiff from bringing a Section 1983 malicious prosecution claim against defendant in her personal capacity).

Here, Plaintiff brings malicious prosecution and other constitutional claims against Defendant Choi, in her individual capacity, alleging that Defendant Choi "maliciously prosecut[d]" the case despite "knowing that [Plaintiff] was never physically in contact with Angela Wade or verbally in contact with Ms. Wade." Compl. ¶¶ 28, 29. Plaintiff also alleges that Defendant Choi was motivated to do so to obtain a monetary reward under the Bias Crime Reporting Rewards Program. *See e.g.*, Compl. ¶¶ 36, 41-42, 81. But decisions regarding "whether to bring a criminal suit" and "how to proceed with a prosecution" fall "squarely within a prosecutor's absolute immunity." *Davis*, 996 F.2d at 629; *Newsome*, 2014 WL 4798783, at *3. Therefore, Defendant is entitled to absolute immunity for Plaintiff's Section 1983 and NJCRA claims, as well as the damages claims that stem from those alleged violations.[9]

### C. Teaneck Defendants[10]

---

[9] Because Defendant Choi is entitled to absolute immunity, the Court does not reach the merits of the parties' qualified immunity and plausibility arguments. *See* Def. Choi Br. at 9-16; Plf. Choi Opp. Br. at 1-3; Def. Choi Reply at 2.

[10] Plaintiff's opposition to Teaneck Defendants' motion to dismiss argues that Teaneck Defendants should not have been granted an extension of time to respond to the Complaint and requests that a default judgment be entered against them. Plf. Teaneck Opp. at 2-4. The Court agrees with Teaneck Defendants that Magistrate Judge Almonte properly granted their request for an extension of time to answer because a court may, for good cause, extend the time to answer pursuant to Fed. R. Civ. P. 6(b) if excusable neglect is shown. *See* Defs. Teaneck Reply at 2-3; *see also Pioneer Inv. Services Co. v. Brunswick Assoc. LP*, 507 U.S. 380, 392-95 (1993) (acknowledging that excusable neglect is a somewhat "elastic concept," that calls for an "equitable" determination that "tak[es] account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice" and "the length of delay," among others). The Court also declines to enter a default judgment. *See Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 178 (D.N.J. 2008) (ruling against the plaintiff's motion for default judgment where the court had allowed the defendants to file a late answer, and accordingly, found no justifiable reason to rush the extreme sanction of default, as the answer was only filed a few days late and was not coupled with bad faith on the part of the defendants).

Defendant Teaneck Police Department contends that because it is an arm of the municipality, it is not a proper defendant under the law. Teaneck Defs. Br. at 14. The Court agrees. "[N]umerous courts [] have considered the question of whether a municipal police department is a proper defendant in a § 1983 action [and] have unanimously reached the conclusion that it is not." *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808, 825-26 (D.N.J. 1993) (citations omitted); *see also Castoran v. Pollak*, No. 14-2531, 2017 WL 4805202, at *7 (D.N.J. Oct. 25, 2017) (dismissing Section 1983 and NJCRA claims asserted against local police department). Consequently, Plaintiff's claims against Defendant Teaneck Police Department are dismissed with prejudice.

Defendant Reed moves to dismiss on two grounds: (1) that he is entitled to qualified immunity; and (2) that the complaint fails to state a plausible claim for relief. Teaneck Defs. Br. at 4-13. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In determining whether qualified immunity exists, a court must assess: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first[.]" *Id.* at 236. "If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (finding that the defendant police

officers were entitled to qualified immunity at the motion to dismiss stage) (citing *Pearson*, 555 U.S. at 232).

Here, the Court turns first to the prong that asks whether a plaintiff has sufficiently alleged that the defendant violated a constitutional right because that question overlaps with the issue of whether the plaintiff has sufficiently pled his claims under 12(b)(6). *See Jones v. Walsh*, No. 15-2629, 2018 WL 1203472, at *4 n. 4 (D.N.J. Mar. 8, 2018) (citation omitted) ("Because the first step of a qualified-immunity analysis is to examine whether the plaintiff has sufficiently alleged that the defendant violated a constitutional or statutory right, that question overlaps with the issue of whether the plaintiff has stated a claim under § 1983."). The Complaint alleges that Defendant Reed violated Plaintiff's constitutional rights when he falsely arrested and maliciously prosecuted him for violating his restraining order. *See* Compl. ¶¶ 43-87. The Court addresses each allegation in turn.

"An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983." *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). Therefore, the "proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-35 (3d Cir. 1995) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).[11] Probable cause exists if, at the time a suspect is arrested, "the facts and circumstances within [the officers']

---

[11] The inquiry into wrongful arrest under the New Jersey Constitution is the same. *See, e.g. Geissler v. City of Atlantic City*, 198 F.Supp. 3d 389, 397 (D.N.J. 2016) ("Under federal and New Jersey law, a plaintiff states a claim for false imprisonment by demonstrating that (1) she was detained and (2) the detention was unlawful.").

knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (internal quotation marks and citation omitted). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 789-90 (3d Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Here, the facts and circumstances, as alleged by Plaintiff, are that Plaintiff arrived at a house that met the description of Wade's house. Compl. ¶ 21. Plaintiff then saw Defendant Reed and approached him "to give him the details of [his] unfortunate predicament." *Id.* While Plaintiff expected that Defendant Reed would "help [him] locate and check on the wellness of [his] children," Defendant Reed arrested Plaintiff for violating the Restraining Order. *Id.* ¶¶ 22-23. Plaintiff makes the conclusory allegation that this constitutes a false arrest but fails to plausibly allege why Defendant Reed lacked probable cause for the arrest. Construing the pleadings liberally, Plaintiff appears to argue that probable cause did not exist because he had "n[ot] even see[n] Angela Wade, let alone ha[d] any contact with any of [his] children" at the time of his arrest. *Id.* ¶ 26. Plaintiff adds that Defendant Reed arrested and prosecuted him to obtain a monetary award under the Bias Crime Reporting Rewards Program. *Id.* ¶¶ 36, 38-42, 81.

At the outset, Plaintiff's allegations as to any purported motive that Defendant Reed had to obtain a monetary reward under the Bias Crime Reporting Rewards Program are not plausible. In addition to being conclusory,[12] they appear to be based on Plaintiff's misplaced understanding of the Bias Crimes Reward Program. While Plaintiff alleges that Defendant Reed is corrupt because

---

[12] *See, e.g.*, Compl. ¶¶ 41, 42, 81.

13

he supposedly aimed to earn extra money by arresting and prosecuting him,[13] the stated goal of the Bias Crimes Reward Program is to "eliminate crimes motivated by prejudice against others based on race, color, religion, sexual orientation, disability, ethnicity, gender identity or other express, and national origin," and the State of New Jersey's website provides tip lines for the public to report individuals who may be targets of bias crimes so that law enforcement may intervene.[14] Here, the Complaint does not allege that Plaintiff was a target of a bias crime nor that Defendant Reed "tipped" law enforcement for a reward. Moreover, because "[t]he qualified immunity standard is one of 'objective legal reasonableness,'" an arresting officer's subjective motivation for making an arrest is not a relevant inquiry. *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007) (citations omitted).

Thus, the Court turns to whether Defendant Reed had probable cause to believe Plaintiff had committed or was committing a crime. Defendant Reed contends that at the time of the arrest, it was reasonable to believe that Plaintiff had violated the law because he had been dispatched to the scene in response to a call from Wade and was aware of the restraining order against Plaintiff, which prohibited Plaintiff's presence at Wade's residence, regardless of Plaintiff's reason for being there. Teaneck Defs. Br. at 12-13. The Court agrees that under the facts and circumstances *pled by Plaintiff*, it was reasonable for Defendant Reed "to believe that an offense ha[d] been committed or [was] being committed" by Plaintiff. *Wright*, 409 F.3d at 602. In fact, regardless of his motivations, Plaintiff appears to have admitted to Defendant Reed that Plaintiff was violating the

---

[13] *See, e.g.*, Compl. ¶¶ 36-42, 78-81.

[14] This information is set forth in the "Bias Crime Unit" section of the State of New Jersey's Department of Law & Public Society website. *See Bias Crime Unit*, State of New Jersey Department of Law & Public Society (2022), https://www.njoag.gov/about/divisions-and-offices/division-of-criminal-justice-home/bias-crime-unit/.

Restraining Order. The Order bars Plaintiff from the "[r]esidence(s) of [Wade]" and prohibits any "unsupervised contact with [Plaintiff's] minor children" and any contact with [Wade] without permission of the court." Ex. A, Order at 14, 17. It also requires that any "contact or communication," including "contact regarding the health, welfare, and well-being of their children" be made through the "Family Wizard." *Id.* Moreover, the Order states that its terms "may only be changed or dismissed by the Family Court," and that a violation of the Order may "constitute criminal contempt . . . and may also constitute violations of other state and federal laws which can result in [Plaintiff's] arrest and/or criminal prosecution." *Id.* at 17. Accordingly, Plaintiff fails to plausibly allege a lack of probable cause for the arrest. Thus, Defendant Reed is entitled to qualified immunity for the false arrest claim, as well as any claims for damages that stem from this claim.

Turning to malicious prosecution under Section 1983, a plaintiff must establish that (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered from a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See Allen v. N.J. State Police*, 974 F.3d 497, 502 (3d Cir. 2020) (quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)). Likewise, under New Jersey law, a plaintiff must establish that: (1) the defendant instituted a criminal action against the plaintiff; (2) the action was actuated by malice; (3) there was an absence of probable cause; and (4) the proceeding terminated in the plaintiff's favor. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 393-94 (2009) (quoting *Helmy v. City of Jersey City*, 178 N.J. 183, 190 (2003)).

For the reasons stated above, Plaintiff fails to plausibly allege the absence of probable cause. This alone is a sufficient basis to dismiss Plaintiff's malicious prosecution claim. *See Herman v. City of Millville*, 66 F. App'x 363, 365 n.3 (3d Cir. 2003) (stating that probable cause is a "complete defense" to plaintiff's false arrest, false imprisonment, and malicious prosecution claims); *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001) (noting that "lack of probable cause is a *sine qua non* of malicious prosecution."). Moreover, Plaintiff's allegations as to malice—which are grounded in Plaintiff's belief that Defendant Reed arrested and prosecuted Plaintiff to obtain money from the Bias Crime Reporting Reward program—also lack plausibility for the reasons stated above. Accordingly, because Plaintiff fails to plead a malicious prosecution claim, Defendant Reed is entitled to qualified immunity for this claim and the damages claims that stem from it.

### V.     Conclusion

When dismissing a case brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, which affords a plaintiff with leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110–11 (3d Cir. 2002). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Normally, no matter how tenuous the claims, the Court would not dismiss with prejudice, particularly when a plaintiff is proceeding *pro se.* Here, however, Defendants are entitled to immunity and any attempted amendment would be futile. Defendants are therefore dismissed with prejudice.

For the reasons stated above, Defendants' motions to dismiss, D.E. 5, 17, and 18, are **GRANTED with prejudice**. An appropriate Order accompanies this Opinion.

Dated: December 21, 2022.

                                                                                _____
                                                                                John Michael Vazquez, U.S.D.J.